UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOBBIE ANN BECHTEL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 4:20-cv-1335-MTS ) |
| KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner[1] of the Social Security Administration, denying the application of Plaintiff Bobbie Ann Bechtel for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act").

**I.   Procedural History**

On October 16, 2017, Plaintiff filed an application for DIB under the Act with an alleged onset date of October 1, 2010. (Tr. 141, 144–45). After Plaintiff's application was denied on initial consideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 79–80). Plaintiff and her counsel appeared for an in-person hearing before the ALJ on September 5, 2019. (Tr. 26–58). Vocational expert Melinda Stahr also testified at the hearing. (Tr. 51–56). In a decision dated November 19, 2019, the ALJ concluded Plaintiff was not disabled under the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi is substituted as the proper defendant.

1

Act. (Tr. 7–24). The Appeals Council denied Plaintiff's request for review on July 27, 2020. (Tr. 1–6). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II. Evidence Before the ALJ[2]

### A. Overview and Function Report

Plaintiff was born in 1994 and alleged disability beginning October 1, 2010 due to blindness or low vision, fibromyalgia, polycystic ovarian syndrome ("PCOS"), psoriatic arthritis, generalized anxiety disorder, major depressive disorder, bipolar disorder type 2, tachycardia, eczema, and asthma. (Tr. 141, 164).

In an August 2017 Function Report, (Tr. 194–201), Plaintiff stated that her physical conditions cause her pain and limit her ability to get around. She could only walk twenty to forty feet before needing to rest for thirty to sixty minutes. She was unable to stand for more than a short period of time, which limits her ability to cook, clean, and care for her pets. Plaintiff indicated she was rarely able to leave home by herself because she was unstable. She stated that she used a cane whenever leaving home and inside when her fibromyalgia flared up, but also that the cane was not prescribed by a doctor. Her daily routine is sedentary and includes several naps and watching television and YouTube.

### B. Medical Evidence

The relevant time period for consideration of Plaintiff's claim is from October 1, 2010, the alleged onset date, until June 30, 2019, the date her insured status expired. This point is not contested. Plaintiff alleged that she suffered from fibromyalgia, polycystic ovarian syndrome, psoriatic arthritis, tachycardia, eczema, and asthma.

---

[2] Plaintiff does not contest the ALJ's ruling as to any mental impairments, so the Court will not discuss evidence of Plaintiff's mental impairments.

In August 2013, Plaintiff was seen by Dr. Joy Stowell for moderate chest and shoulder pain. (Tr. 293–94). On January 8, 2016, she saw Dr. Sandra Hoffman, who noted that Plaintiff had "fairly severe" fibromyalgia symptoms. (Tr. 501). Plaintiff saw her primary care physician, Dr. Cole Scherder, in June 2016 for increased fibromyalgia symptoms, at which time he prescribed amitriptyline. (Tr. 255–57). In October of the same year, Dr. Scherder signed a disability parking form for Plaintiff to use when her fibromyalgia symptoms flared up. (Tr. 258–59). Plaintiff saw Dr. Scherder again on January 10, 2017 and told him she was considering going on disability. (Tr. 260). Dr. Scherder suggested this was "not a good idea" as he believed that her condition was controllable with pain management. (Tr. 260–61). Plaintiff then received a fibromyalgia examination from Dr. Suresh Krishnan, who found fibromyalgia tender points in seven of nine locations bilaterally. (Tr. 420). Dr. Krishnan prescribed Vitamin B12 injections and Norco Tablets. (Tr. 414, 420). In August 2017, Plaintiff saw Dr. Scherder and requested additional Vitamin B12 injections for escalating fibromyalgia symptoms. (Tr. 265). On June 19, 2018, Dr. Jessica Miller examined Plaintiff and noted that Plaintiff's fibromyalgia is "usually very well controlled" by medication. (Tr. 559).

On July 14, 2014, Physician Assistant ("PA") Lynn Catrett reported that Plaintiff did not have psoriatic arthritis. (Tr. 285–86). Over a series of appointments in 2016 and 2017, Dr. Scherder made no finding of psoriatic arthritis. (Tr. 255–67). In June 2018, Dr. Miller described Plaintiff's psoriatic arthritis diagnosis as "questionable" and noted that Plaintiff was not taking any medications to treat the condition. (Tr. 562).

On June 15, 2016, Dr. Scherder found that Plaintiff was "highly suspicious" for PCOS after noting that she missed her periods and showed increased facial hair. (Tr. 255–57). Plaintiff was examined by Nurse Practitioner ("NP") Michelle Allen the next month. (Tr. 240). NP Allen noted

that Plaintiff had a high testosterone level and diagnosed metabolic syndrome. (*Id.*). NP Allen also scheduled an ultrasound for Plaintiff, and after reviewing the ultrasound, she diagnosed Plaintiff with PCOS and prescribed Provera, spironolactone, and metformin. (Tr. 242). In June 2018, Dr. Miller noted that Plaintiff's PCOS was "well controlled." (Tr. 559).

C.  **Medical Opinions**

In December 2017, Dr. Garland Tschudin evaluated Plaintiff's physical residual functioning capacity ("RFC"). He found that evidence did not support the severity of exhaustion and pain reported by Plaintiff. Dr. Tschudin concluded that Plaintiff could sustain a forty-hour work week with some limitations on lifting, carrying, and climbing ladders. (Tr. 66–68).

D.  **Hearing Testimony**

On September 5, 2019, Plaintiff appeared and testified before the ALJ. (Tr. 26–58). Plaintiff's counsel stated that Plaintiff is disabled primarily due to fibromyalgia, arthritis, and anxiety disorder. Plaintiff explained that she suffers from severe pain that limits her ability to stand for more than fifteen minutes or walk more than twenty feet without a rest. She stated that she uses a cane daily and is unable to shower without help due to the risk of falling. Because of her pain and fatigue, Plaintiff said she spends most of her time watching television or internet videos and is usually not able to cook for herself or clean her home. Plaintiff reported that she does not leave home often and usually uses a scooter or wheelchair at a store.

Plaintiff described her previous work history including working as a medication aide at a residential care facility, as a telemarketer, as a hotel housekeeper, and as a childcare worker. She did not keep any of the jobs for a long period of time and stopped working for the last time in 2017. She explained that she had to leave the jobs because of stress and pain.

Melinda Stahr, a vocational expert, also testified at the hearing. (Tr. 51–56). She identified several light work jobs and several sedentary jobs that a hypothetical person of Plaintiff's age, education, and work experience could perform. She also testified that an employee missing two days a month, having to regularly leave work early, or being off-task for more than fifteen-percent of the workday would preclude competitive employment.

### III.     Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Social Security Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e). At this point, the ALJ assesses the claimant's RFC, "which is the most a claimant can do despite her limitations." *Moore v. Astrue*,

572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545.  The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id*.

A court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp."  *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

6

## IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity since October 1, 2010, the alleged onset date. (Tr. 12). At Step 2, the ALJ found Plaintiff had severe impairments of fibromyalgia, major depressive disorder, and generalized anxiety disorder. (Tr. 12–13). At Step 3, however, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met or medically equaled a statutorily recognized impairment. (Tr. 13–14). The ALJ determined that Plaintiff retained the RFC to perform light work with some limitations. (Tr. 14). She could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She was limited to simple repetitive tasks in an environment not requiring close interaction with the public. At Step 4, the ALJ found that Plaintiff had no past relevant work. (Tr. 19). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found there were jobs in the national economy that Plaintiff can work, such as small product assembler, folder, and touch-up inspector. (Tr. 19–20). Therefore, the ALJ concluded that Plaintiff is not disabled.

## V. Discussion

Plaintiff raised just one issue in this case: whether the ALJ failed to develop the record properly by failing to pose a complete hypothetical question to the vocational expert. Specifically, Plaintiff argues that the ALJ failed to include her cane use in the hypothetical posed to the vocational expert, and that this omission affected the ALJ's determination regarding Plaintiff's RFC.[3] Doc. [31] at 6.

---

[3] Plaintiff testified that she uses a cane daily and has trouble showering alone or getting dressed and undressed without help. (Tr. 34–35).

A.  **The ALJ's Hypothetical Was Proper**

The ALJ has an independent duty to develop the record fully and fairly in a social security disability case.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  This development of the record may include testimony from a vocational expert, as was presented at the hearing in the present case.  "When an ALJ poses hypothetical questions to a vocational expert to determine the availability of other work, the ALJ 'must precisely set out all of the claimant's impairments.'" *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 2008) (citing *O'Leary v. Schweiker*, 710 F.2d 1334, 1343 (8th Cir. 1983)).  However, a hypothetical is only required to include the impairments and limitations the ALJ finds to be supported by the evidence as a whole.  *Nash v. Comm'r Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).  The hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true, and the ALJ may exclude any alleged impairments that he has properly rejected as untrue or unsubstantiated. *Perkins v. Astrue*, 648 F.3d 892, 901–02 (8th Cir. 2011).  A hypothetical is not insufficient merely because it does not include all the health limitations alleged by the claimant.  *Kraus v. Saul*, 988 F.3d 1019, 1027 (8th Cir. 2021).

In the present case, the ALJ properly rejected and found Plaintiff's alleged need for a cane unsubstantiated by the record.  The ALJ noted evidence from the record that showed Plaintiff "has a normal gait and full muscle strength in her upper and lower extremities." (Tr. 17).  Indeed, the record contains numerous examination reports spanning several years that consistently find Plaintiff did not have problems with her gait.  *See, e.g.*, (Tr. 288, 320, 376, 487, 528).  The ALJ also cited a comprehensive musculoskeletal examination from 2017 where Plaintiff was able to "toe walk and heel walk with good strength."  (Tr. 17, 419).  In another 2017 examination, Dr. Cole Scherder, Plaintiff's primary care physician, reported that Plaintiff had a normal gait and

8

recommended against applying for disability. (Tr. 505). Finally, Dr. Garland Tschudin, who evaluated Plaintiff's medical history for her initial DIB application, found "no reports of falls to merit concern for falling when showering or being unstable outside alone." (Tr. 66). Dr. Tschudin also noted that Plaintiff's "[a]llegation of inability to walk more than 20 [to] 40 f[ee]t and need to use a cane is not supported" by the record. *Id*. The record contains significant evidence that is inconsistent with Plaintiff's claim that she requires the use of a cane. Thus, the ALJ's decision to exclude a cane limitation in the hypothetical is supported by substantial evidence.

The precedents cited by Plaintiff in support of her argument that the ALJ posed an improper hypothetical are factually distinguishable from the present case. In *Morrison v. Apfel*, the Eighth Circuit found that the ALJ improperly failed to include the claimant's obesity in a hypothetical question posed to a vocational expert. 146 F.3d 625 (8th Cir. 1998). However, that claimant's doctor had identified his obesity as his "biggest problem," *id.* at 628, whereas here, Plaintiff's cane use is hardly mentioned in the record in comparison to her other conditions. The Eighth Circuit also found a hypothetical question improper in *Reeder v. Apfel*, when the ALJ included an estimate of the claimant's IQ that was not supported by evidence in the record. 214 F.3d 984 (8th Cir. 2000). In the present case, rather than including an unsubstantiated impairment in the hypothetical question, the ALJ excluded one. And, as the Court already concluded above, the exclusion is supported by substantial evidence in the record. Finally, in *Cox v. Apfel*, the Eighth Circuit found a hypothetical question improper because the ALJ improperly discounted the claimant's subjective complaints of pain and failed to properly develop the record. 160 F.3d 1203 (8th Cir. 1998). However, unlike the subjective complaints of pain in that case, the claimed impairment omitted from the hypothetical here is an objective one. Additionally, the ALJ in *Cox* failed to develop the record because the ALJ omitted large amounts of medical records that could have supported the

9

claimant's complaints of pain, *id.* at 1209–10, but in the present case, Plaintiff has made no claim that the record is missing medical records that would support her claimed need to use a cane. While Plaintiff has cited precedent demonstrating that a hypothetical question can be improper in some circumstances, none of these decisions support her argument that the ALJ's hypothetical questions were improper in this case.

B.  **The Alleged Error by the ALJ Was Harmless**

Finally, even if the hypothetical question posed by the ALJ to the vocational expert was improper, reversal would not be warranted here.  "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).  An error in posing a hypothetical question may be harmless "if there is no conflict with the [vocational expert]'s testimony and the [Directory of Occupational Titles] or there is no indication that the ALJ would have decided the case differently." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1232 (E.D. Mo. 2012).

Plaintiff states in her brief, without support, that the ALJ's error "changed the outcome of the case."  Doc. [31] at 8.  However, the vocational expert's testimony and the ALJ's opinion indicate otherwise.  The omission of a claimant's alleged limitations in a hypothetical question has been found to be a harmless error when the vocational expert identified jobs that would not have been affected by the limitation. *Meyerpeter*, 902 F. Supp. 2d at 1232.  The ALJ asked a hypothetical involving a person of Plaintiff's age, education, and work experience whose exertion level was "sedentary"— which is defined in part, as a job where "walking and standing are required occasionally."  20 C.F.R. § 404.1567(a); (Tr. 54).  The vocational expert testified that such a person could perform several jobs, including bench hand, document preparer, and touch-up

10

inspector.  *Id.*  Since these jobs are sedentary and involve a minimum amount of physical exertion, there is no indication at all that the vocational expert's answer would have changed if the ALJ had included cane use in the question.  In his opinion, the ALJ included one of these sedentary occupations, touch-up inspector, as a job that plaintiff could perform given her RFC.  Since the ALJ found Plaintiff could perform a job that does not require an appreciable amount of unassisted walking, the alleged error in the hypothetical posed to the vocational expert was ultimately harmless.

## CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the ALJ's determination.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th day of March, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE